Mr. Delisle, is that how you pronounce it? That's correct, Your Honor. I may please the Court, Edward Delisle, on behalf of Appellant National Recoveries Incorporated. National Recoveries was awarded a contract for debt collection services in 2014. Let me ask you a question. Suppose in the other case we were to hold ultimately, just hypothetically, that the district court's second paragraph of the injunction about dilution should be reversed. Let's assume hypothetically we do that. Do you care what happens here? Is this case then moot? I love everyone here, but I do not care. The issue would be moot for my purposes, Your Honor. Let's face it. The issue for national recoveries is does it have the ability to pre-existing contract. That's what this is all about. If the Court were to address the issue that Your Honor identified in that manner, it would seem to me that that would resolve that issue. That would be moot. Your case would be moot. Yes, Your Honor. Thank you. Yes. Shall I continue? Yes. I thought maybe I was done. He had been successfully performing under that 2014 contract. He was under that contract for over a year, receiving new work every single month, certainly as would have been identified in the spreadsheet that the Court just reviewed, and had been doing so just as it had received new work every month for five years under its previous contract in 2009. Then suddenly, as we all know, based upon the protests in the underlying case here, which relate to a separately procured set of contracts for the same type of work, everything stopped. This broad, all-encompassing preliminary injunction in the underlying case here not only prevented the Department of Education from issuing work to those vying for awards through the separately procured contracts, but it also stopped education from awarding work to pre-existing separately awarded contracts, including that which was held by the appellant, my client, National Recoveries. Of course, National Recoveries, in an effort to protect its rights under its pre-existing contract, attempted to intervene, and the Court of Federal Claims denied that request for intervention on the grounds that National Recoveries had no legally protectable interest because its contract only... What's our standard to review on the denial of a motion to intervene as a matter of... It's actually a good question because it's not been determined specifically. Our position is that it's de novo. There are no facts in dispute here. I don't think anyone... Well, there's a dispute from my adversary. He believes it's abuse of discretion. Quite frankly, I don't know that the result should be any different. Our position is, because there are no facts in dispute, that it should be a de novo standard. So what Judge Braden decided to do in the underlying case was deny our ability to intervene because she determined that we did not have a legally protectable interest, and that we... In fact, we had no interest in the action because any judgment in the case would not affect our ability to receive new work at some point later in time. And by reaching that conclusion, she was effectively stating that we had failed to satisfy the first prong of Rule 24's three-prong test that must be satisfied to successfully intervene, and of And for purposes of reaching a decision in this case, our position is the court should consider four cases. We cite to others, but there are four primary. Two Federal Circuit cases... We have the government, and we have other appellants in the related litigation already suing to lift the preliminary injunctions. So what's your separate interest? Our interest... Your protection. Our belief is the overbroad nature of the underlying preliminary injunction is preventing us and other small businesses that are similarly situated from receiving work that we would otherwise receive under our contract, which... There's no small... Your answer is there's no small business in the case unless you're allowed to intervene, right? That would be true. That's correct, Your Honor. Why is the government not an adequate representative of your interests, given that the government is making the allocation decisions, and at least as a general matter, you don't have much entitlement to force the government to give you accounts? And that is all true. And I would say two things, Your Honor. First, the history belies the notion that we wouldn't receive... Understanding where Your Honor is coming from... But I'm asking, I guess, specifically about the... Is there an adequate representation component to this? As Your Honor pointed out, at least presently, the Department of Justice has been advocating a position that would be advantageous to national recoveries. That part is true. To the extent that this litigation perpetuates, we have no idea to what extent the Department of Justice will continue to advocate on behalf of small business. We just don't. And I point, Your Honors, to the Northrop Grumman case, Judge Block's Court of Federal Claims case from 2006, where he took the position that, look, the showing for adequate representation for a prospective intervener is small. If it can show that there is some divergence, or could be some divergence, between other counsel in the case and the position that the prospective intervener would take, it's enough. Our position on that would be, and it wasn't decided by Judge Brayden, while right now the Department of Justice has, in fact, been taking a position that would be advantageous to us. The issues that the Department of Justice is dealing with in the underlying litigation is vast. If you take a look at the briefing that was filed by the Department of Justice, for example, the reference to small business is very small. The brief is very long. And so what we are concerned with is that our problem will be lost in the mix of all these other issues that would have to get litigated if this thing were to perpetuate. So the four cases, you have two Federal Circuit cases and you have two Court of Federal Claims cases. And the two Federal Circuit cases that were referenced by the parties are of somewhat limited value, but one is more instructive than the other. The two are American Maritime and Transportation and Freedom Wireless. The two Court of Federal Claims cases, Armor of America, Judge Damage's case, and Northrop Grumman, which I mentioned earlier, it's Judge Block's case. We think those are very important as they get much more detail with respect to the whole issue of intervention when it should be permissible. But let's start very quickly with American Maritime. It's a 1989 Federal Circuit case and I submit to the panel that the facts of that case are such that it is of limited value in evaluating our case. It's a case about shipping subsidies and a contractor that got into a dispute with the government over whether these shipping subsidies should have been provided. The intervener was a competitor and wanted to participate in the lawsuit because it feared that if American Maritime prevailed, that the intervener would be facing stiffer competition at some point indefinitely in the future, maybe. The Federal Circuit stated that fear of future subsidized competition, which may never arise, does not reflect an interest in the property or transaction at issue in this action. Not a surprise given the facts of that case. The facts of this case are very different. The facts of this case are such that we are getting no contracts at this time and we are not permitted to get – excuse me, we are not getting transfers. We are getting no additional new work because of the injunction that's in place. So there's not some indefinite, indirect or contingent harm or interest. Our interest is very direct at the present moment unless the Federal Circuit decides to act otherwise. So very different. In fact, Judge Block, in finding for intervention in the Northrop case, did exactly what we're suggesting here, which is distinguish American Maritime from the facts of that case. And I'll get into that in a moment. The other case that's instructive, we think more so than American Maritime, is Freedom Wireless and for this reason. It was an infringement case between Freedom Wireless and Boston Communications. After the action was initiated, a non-party, Nextel, entered into a contract with Boston Communications. An injunction was then issued which Nextel felt impacted its contract rights with Boston Communications and so it filed a motion to remain. In Freedom Wireless, this court took the position that it appeared that Nextel had a legally protectable interest relating to the injunction and why is that important. It's important because in that instance, or that was an instance where a contract right was being impacted by an injunction in a separate matter and that contract constituted a legally protectable interest. That's what we're trying to protect here, our contract right. Quickly going to the two cases we think are very important, Armor of America and Northrop Grumman. Both are important because they get into so much detail with respect to when intervention should be permissible. Both cases involve non-parties that wish to intervene to protect their disclosure or the disclosure of proprietary information and in both cases, intervention was permitted. In both cases, the court determined that the non-party had a legally protected interest in the proprietary information and NRI submits that it has a legally protected interest in its contract and its ability to receive work from that contract as it had been receiving for more than a year prior to the preliminary injunction. We simply wish to intervene to protect that interest just as Nextel was permitted to do in the Freedom Wireless case and it should not have been a leap for the Court of Federal Claims to do because as Judge Block pointed out in Northrop Grumman, satisfying the legally protectable interest issue is, quote, not a very high barrier, end quote. That's at page 144 of the opinion. Neither Armour of America or Northrop Grumman, the facts in those cases were such that the intervener in both cases had no interest in the ultimate outcome of the case yet intervention was allowed anyway. And as Judge Damage pointed out in Armour of America, although the Federal Circuit has not clarified the meaning of the term action as that term is used in Rule 24, other courts have chosen not to limit the term to the case as a whole but instead have expanded the definition to encompass collateral issues in the suit. And we're suggesting that that's precisely what should occur here. So appellant was unwittingly dragged into the underlying matter here and simply desires the right to if it's necessary. And at this juncture, it still is. Okay. Thank you, Mr. Long. Mr. Ginsburg. Your Honors, Alex Ginsburg for Continental, the appellee. Your Honors, unlike perhaps the other appeal you heard in the consolidated cases a bit earlier, this appeal is extremely alone, which is the NRI does not have a legally protectable interest under the test required by this circuit. And let me elaborate on that. As was not disputed at any point during this appeal or during the case below, the Department of Education does not reserve pools of accounts for a particular contractor or set of contracts. And in other words, there is no contract right expectation that in the normal course you will receive business isn't sufficient? Your Honor, there's no case that would hold that. Every case cited by the appellant here is distinguishable and more importantly, very clearly holds and I can go into each of them that intervention can be granted when there's a proprietary interest or a significant contract right to protect. And here there is no such right. And the appeal fails for that reason alone. Is it the same thing as standing? Your Honors, I think it's extremely similar to standing. That is not the language of the cases. They analyze rule 24, but I think essentially what they're analyzing is statutory standing. Well, why is there not a contract right to have the Department of Education make its account allocation decision free of the kind of constraint that has been imposed by the injunction right now that would preclude the Department from exercising that right? The simple answer to that is there is no right in NRIs or any of the small business contracts to any amount of transfers. And there may be a separate problem here in terms of the arbitrariness with which the Department of Education has administered these contracts, but the bottom line is these are indefinite quantity, indefinite delivery contracts with minimal minimums, and there is no set right to any of the account transfers that NRI is saying it's lost. Well, they have a right to a $1,000 minimum, right? I believe that's correct, Your Honor. And they're not getting that, right? Your Honor, if that is all that NRI seeks, I assume something could be worked out. But it's certainly enough to give them standing, right? Your Honor, I mean, I think that the cases will tell us, and actually the test itself, and I'm quoting Wolfson v. Pacific Coast. Unlike the, what is it called, the Freedom Wireless case that appellant relies on heavily, which is an unpublished decision from this court, Wolfson and the case that it cites, that being American Maritime, that's the controlling precedent here. And the second prong of the relevant test is that the movement must claim some interest in the property affected by the case. The interest must be, quote, legally protectable and merely economic interests will not suffice. And we could parse the scope of merely economic. The cases that found the right to intervene focused on significant intellectual property rights, the protection of proprietary information that could have a key lasting impact on the future of the company, and those sorts of economic rights. And that's pervasive throughout these decisions. But in all these cases, isn't their only interest really dealing with economic nature? They are economic, but not merely economic, or I should say not a matter of a mere economic interest. It's not something de minimis. We're not dealing with IP interest or any other thing like that. I think most of these cases are dealing with IP interests, in fact. But it's whether or not these companies or these would-be interveners have a proprietary interest, often in IP interest, in the actual property in question. There are plenty of cases where people have challenged bid awards because of the expectation that they would succeed with the thing where we bid, and that's been held to create standing. So if standing and intervention, as you seem to agree, were the same thing, this would pretty clearly fall within those cases. You're on a great point. And I should note, by the way, just to backtrack for one second, that we believe that the $1,000 minima have been met in NRI's case and the small businesses' cases. In any case, to your point, it is true that the common intervener in a bid protest is the purported or putative awardee. And that's another key fact here, because NRI has not been involved in any way in this procurement, the one that's subject to the underlying protest and now this appeal. NRI's contract was not procured as a result of this 2016 competition. They weren't an awardee. They weren't even in an offeror in the procurement. And that's the key distinction. And that actually gets to part two, or part three, I should say. It actually prevents them from getting business that they'd otherwise get, right? Your Honor, I think you heard a whole description of the- The injunction deprives them of business that they would otherwise get in the normal course. I think the facts would say that it has enjoined them from getting new account transfers, but again, they are not legally entitled to this. In the normal course. Absent the injunction, they'd be getting additional accounts, right? Only Ed could say that, the Department of Education. I mean, again, no legal entitlement. Department of Education has said they would get the accounts if the injunction didn't exist. Right. Your Honor, I think that is true. I would still say there was no legally protectable interest in those accounts because there's no contract right to those accounts. And again, as you heard before, they can continue to process the accounts that they already possess. It's just a question of receiving new accounts in the short term while Ed completes its corrective action. And also again, Continental is not responsible for the government's delay in this. In any case, I'm happy to answer more questions. I think we probably all know that the test says, again, it's mere economic interests are not sufficient. And then the third prong of the relevant test is that the interest relationship to the litigation must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. And as I mentioned before, NRI's is not a part of this procurement and the effect of the bid protest will have no impact on NRI's contract. So really, the third prong of this test isn't met either. So again, no legally protectable interest can satisfy prong two of the relevant test. And also, because the contract is not the subject of this litigation, there's no direct and immediate impact of the litigation on NRI's contract. And certainly I understand your point, Judge Dyke. I mean, their contract has been temporarily paused in terms of receiving new accounts, but the contract is still in place. And as soon as Ed completes its corrective action, they're free to move on with it. And again, if you look at all the cases cited by both parties, but I'll focus on the ones cited by NRI, the common thread in all these cases, that being Northrop Grumman, Freedom Wireless, Armor of America, and everything else they cite, the common thread is that in each case there was a legally protectable interest. And that doesn't exist here for the reasons we discussed. And Your Honor, I want to make one further point, is that if this court determines that prongs two and three of the relevant tests are met, what the court should do is remand for a determination of whether the government's interest was sufficient to protect NRI. The government argued on behalf of NRI's position throughout, as did other appellants in these cases, including Altran, both said that the injunction should be lifted as to the small businesses. That is 100% of NRI's interest and sufficient to protect them here. Okay. Thank you, Mr. Ingram. Mr. Delisle, do you have anything further? Yes. Thank you, Your Honor. Just very briefly. This notion that there's been no impact on NRI's contract, which I just heard it was in the briefing, is completely untrue, as we all know. But it's not just based on the obvious. We have not been receiving placements since this preliminary injunction was in place. But we also can't get this time back. So we haven't received any new work for, let's call it six months. That six months is gone. And the longer this continues, the more time is lost, the more opportunity is lost to national recoveries. So there is something very tangible at stake here, and it's very important that that gets taken into consideration as part of this. That's assuming you would get the work. Under an IDIQ contract, there's no guarantee, right? It's true that there is no guarantee. Our position is that the history belies the fact that we would not receive additional placements as we have since 2009. Every month since 2009, National Recoveries has received new work every single month. So I understand your point, Your Honor, but the history would belie the fact that that would not occur. Okay. Any further questions? Thank you, Mr. Delisle. Thank you, both counsel. The case is submitted. That does not conclude our session today. The court will recess briefly. Okay. In the first continental case, number 172155, the court has determined to stay pending appeal, the second part of the District Court of Federal Claims preliminary injunction, which has been referred to colloquially in this discussion as the dilution provision. And we will issue a formal order to that effect either later today or Monday, but the stay is effective immediately. And if there are no questions about that, I don't think we have anything further. Does counsel have any questions? Yes. Your Honor, just to clarify, so prong one, halting the awardees remains in effect? Remains in effect for the time being. Any further questions? Okay. Thank all That concludes our session for this morning. All rise.